Samuel J. Silverman, J.
Plaintiff Universal C. I. T. Credit Corporation, as assignee from Herbert S. Paris, Inc., brings this action for goods sold and delivered for $19,887.90, the price of eight automobiles sold by plaintiff’s assignor to the defendant Greyhound Rent-A-Car, Inc. The defendant admits the indebtedness but interposes a counterclaim consisting of an admitted indebtedness of $17,244.16 from plaintiff’s assignor to defendant.
The sole issue in the case is whether this counterclaim may properly be interposed.
The case was submitted on a stipulation of facts, the essential elements of which are as follows: On September 21, 1957, the defendant, in connection with its purchase of various automobiles prior to that date, overpaid Herbert S. Paris, Inc., the sum of $20,000. On September 17,1958, the defendant and Paris entered into a written “ Repayment Agreement ” in which Paris acknowledged its indebtedness to the defendant in the sum of $20,000 and agreed to repay the indebtedness in monthly installments, together with 5% interest on the unpaid balances, commencing with September 18, 1958, and on the 18th day of each month thereafter. The Repayment Agreement provided: “ 4. In the event of any default in the payment of any installment of principal or of interest, the entire unpaid balance, together with the interest thereon, shall, without notice, become immediately due and payable.”
The Repayment Agreement provided for a confession of judgment by Paris in defendant’s favor in the sum of $20,000, to be held in escrow by defendant’s attorney. The Repayment Agreement further provided:
“ 5a. In the event of any default in the payment of any installment of principal or of interest, the escrow agent shall forthwith deliver the said confession of judgment to Greyhound, who may *165 file the same with the County Clerk of the County of New York ”. * * * “ Any extension, modification or indulgence at any
time given or granted by Greyhound to Faris shall in no event affect the rights and remedies of Greyhound ”.
“No delay or omission in exercising any right, power or remedies accruing to Greyhound shall be construed as a waiver of any default hereunder nor any waiver of any breach or default thereafter accruing
The agreement, together with the first installment of $1,000, was delivered to defendant on September 18, 1958.
On October 18, 1958, defendant received $1,000 from Faris, but Faris failed to pay the interest in the sum of $79.16 due on that date. Similarly, on November 18, 1958, defendant received the sum of $1,000, but Faris failed to pay the $75 interest due on that date or the interest still due and owing on the prior month’s installment. No further payment of principal or interest was made.
The parties agree that all the above took place without the knowledge of the plaintiff.
Between December 8 and December 12, 1958, defendant purchased from Faris eight automobiles for an agreed price of $19,887.90, and received eight individual invoices in connection therewith. On the date of each invoice a carbon copy thereof was delivered by Faris to plaintiff, with an assignment typed thereon. No copy of the assignment was delivered to the defendant except in connection with this proceeding.
Faris failed to pay to the defendant any part of the installment of principal and interest due under the Repayment Agreement on December 18,1958. On December 19,1958, the confession of judgment, in favor of defendant against Faris, was filed in this court in the sum of $17,244.16, including costs.
During the last week of December, 1958, Faris ceased doing business and became insolvent.
Subdivision 1 of section 267 of the Civil Practice Act provides: “If the action is founded upon a contract which has been assigned by the party thereto, other than a negotiable promissory note or bill of exchange, a demand existing against the party thereto or an assignee of the contract at the time of the assignment thereof, and belonging to the defendant, in good faith, before notice of the assignment, must be allowed as a counterclaim to the amount of the plaintiff’s demand, if it might have been so allowed against the party, or the assignee, while the contract belonged to him ”.
Subdivision 3 of section 41 of the Personal Property Law provides that the transfer of a claim is “ subject to any defense *166 or counterclaim, existing against the transferrer, before notice of the transfer.”
It is settled that a claim, in the nature of setoff against plaintiff’s assignor, may not be interposed as a counterclaim against the assignee unless the counterclaim was actually due at the time of the assignment (Michigan Sav. Bank v. Millar, 110 App. Div. 670 [1st Dept., 1906], affd. 186 N. Y. 606 [1906]; Golden v. Paskie & Co., 205 App. Div. 610 [1st Dept., 1923]; Collens v. Philipsborn’s, 209 App. Div. 483 [1st Dept., 1924], affd. 239 N. Y. 611 [1925]). This requirement applies even though plaintiff’s assignor has become insolvent. Thus the right of setoff or counterclaim is lost if the assignment to plaintiff takes place before defendant’s demand against plaintiff’s assignor has matured (Fera v. Wickham, 135 N. Y. 223, 230 [1892]; Myers v. Davis, 22 N. Y. 489 [1860]; Collens v. Philipsborn’s, supra).
The issue in this case thus comes down to whether defendant’s claim against Faris was matured and due before assignment of Faris’ claim to plaintiff (or notice thereof).
Defendant’s claim against Faris was a matured claim for the entire period from September, 1957, until the date of the Repayment Agreement of September 17,1958. Upon the execution of that agreement, defendant’s claim ceased to be matured and became a right to be paid in monthly installments. Section 33-a of the Personal Property Law provides:
‘ ‘ 1. Executory accord as used in this section means an agreement embodying a promise express or implied to accept at some future time a stipulated performance in satisfaction or discharge in whole or in part of any present claim * * * and a promise express or implied to render such performance in satisfaction or in discharge of such claim * * *.
“ 2. An executory accord, hereafter made, shall not be denied effect as a defense or as the basis of an action or counterclaim by reason of the fact that the satisfaction or discharge of the claim * * * which is the subject of the accord was to occur at a time after the making of the accord, provided the promise of the party against whom it is sought to enforce the accord is in writing and signed by such party or by his agent ”.
The Repayment Agreement is an executory accord within the meaning of the statute, being an express promise to pay the indebtedness at a future time, with the clearly implied promise on the part of defendant to accept that future performance in satisfaction or discharge of the claim. In the absence of breach, the Repayment Agreement would have been effective as a defense to a suit by defendant on the original claim.
*167 But defaults occurred under the Repayment Agreement. Interest was not paid on October 18 or November 18, although the $1,000 principal installments were paid. Under the literal language of the agreement, upon such default in the payment of an installment of interest ‘ ‘ the entire unpaid balance, together with the interest thereon shall, without notice, become immediately due and payable ”. Defendant argues that thus the claim was again a matured claim by October 18,
Plaintiff argues that defendant waived the default. Although defendant’s attorney had a confession of judgment for the full amount in his possession, which he had a right to file immediately upon any default, defendant neither filed that confession of judgment nor in any other way indicated an intention to treat the entire indebtedness as accelerated and matured until December 19, 1958. It gave no such indication when Paris paid the installment of principal without interest on October 18. It gave no such indication again when Paris did the same thing on November 18. But the day after Paris defaulted in the payment of an installment of principal on December 18 defendant filed the confession of judgment for the full amount. Prom the course of conduct of the parties here, I find that defendant elected to treat the installment payment provisions of the Repayment Agreement as continuing in effect until the default of December 18, 1958, i.e., elected not to take advantage of its right to accelerate the entire indebtedness on the dafault in payment of interest on October 18 and November 18, and it thus waived the effectiveness of those provisions until at least December 18. It is not difficult to conceive that there were good business reasons for defendant to do so with a debtor who had made no payments for a year prior to the Repayment Agreement.
Defendant quite properly points to the provisions of the Repayment Agreement that no delay or omission in exercising its rights shall be construed as a waiver of any default and that any indulgence given to Paris should in no event affect the rights and remedies of defendant. But even a nonwaiver provision of an agreement may itself be waived (Beatty v. Guggenheim Exploration Co., 225 N. Y. 380, 387 [1919]) and I find that this is what happened in this case at least until December 18, 1958.
Of course immediately after December 18, 1958, when Paris defaulted in the payment of an installment of principal, defendant manifested its election to treat the installment provisions of the Repayment Agreement as no longer in effect, and from then on defendant’s full claim against Paris was again matured. But this was after the assignment from Paris to plaintiff.
*168 It was also after notice of that assignment to defendant if that be necessary. The invoices, which defendant received at the same time that it received the c'ars, all bore the notation ‘ ‘ Please mail all checks to Universal 0.1. T. ’ ’. Of course this notation is not as clear as if there had been explicit statement that the account had been assigned to plaintiff. But this type of notation has been held to be a fact from which notice can be inferred (Armstrong Co. v. Kasco Mills, 9 A D 2d 871 [1st Dept., 1959]). Bearing in mind that plaintiff Universal C. I. T. is one of America’s great automobile finance companies — a fact of economic life of which, I think, I can take judicial notice — and that defendant is itself in the automobile business, I hold that this notation on the invoices, in fact, put defendant on notice that plaintiff had at least a security interest in the account.
I therefore hold that defendant’s claim against Faris had not matured prior to the assignment by Faris to plaintiff of Faris’ claim against defendant, and notice thereof to defendant. Accordingly, defendant may not interpose its claim against Faris as a setoff or counterclaim to this suit by plaintiff, Faris ’ assignee.
I think this result also accords with the probable business expectations of the parties and the equities of the situation. The defendant knew that it had a bad debt on its hands on which it had been unajble to collect for over a year. It was resigned to installment payments as the best way to salvage whatever could be salvaged in the situation. In view of the Repayment Agreement, defendant presumably expected to pay for the oars when it bought them notwithstanding the indebtedness from Faris. Indeed if defendant had indicated that the installment-payment provisions of the Repayment Agreement were no longer in force after the interest defaults of October 18 and November 18, it may well be that Faris would not have sold the cars to defendant without receiving immediate cash payment. On the other hand plaintiff expected to be paid for the cars, and presumably gave some consideration for the assignments. To allow defendant to interpose the present counterclaim would be to give it a windfall (comparatively speaking) which it did not expect, because of the fortuitous circumstance that it had bought these cars, and to impose on plaintiff a risk which nobody contemplated that it should take. In the circumstances, as between these two innocent parties, I think the risk of loss arising from Faris ’ insolvency in these transactions should be placed on defendant.
Accordingly, the counterclaim is dismissed as not properly interposable against this plaintiff.
*169 The parties have stipulated that any judgment here shall be without interest or costs.
Accordingly, I direct judgment in favor of plaintiff against defendant for $19,887.90, without costs, disbursements or interest.