UNITED STATES of America

v.

GLEANERS AND FARMERS COOPER-
ATIVE ELEVATOR COMPANY.

Civ. No. 69 H 211.

United States District Court,
N. D. Indiana,
Hammond Division.

July 6, 1970.

A. J. Metcalf, Atty., Dept. of Agriculture, Chicago, Ill., William C. Lee, U. S. Atty., Fort Wayne, Ind., J. Frank Kimbrough, Asst. U. S. Atty., Hammond, Ind., for the United States.

Victor J. Roberts, Lowell, Ind., for Gleaners and Farmers Cooperative Elevator Co.

## MEMORANDUM

BEAMER, District Judge.

The Gleaners and Farmers Cooperative Elevator Company bought from Mr. and Mrs. Donald Jurs several thousand bushels of corn and soybeans in which the United States Department of Agriculture claims a security interest. The United States brought this action for conversion against the elevator company, and moved for summary judgment. Defendant denied that plaintiff had a perfected security interest in the crops, and filed an affidavit by Leigh Ellis, the manager of the elevator company, in opposition to the motion for summary judgment. Ellis states that prior to purchasing any crops from the Jurs, he personally called the office of the Farm Home Administration in Rensselaer, Indiana, and was advised by Mr. William Otto that "they didn't have a lien of 1968 crops, only a lien on livestock and farm machinery." Plaintiff filed no response to the affidavit. The Court ruled that the Government did have a perfected security interest in the 1968 crops, but denied the motion for summary judgment because of the issues raised in defendant's affidavit. The government has now filed a brief addressed to defendant's affidavit and moves the Court to reconsider the denial of plaintiff's motion for summary judgment.

The government first argues that it cannot be estopped by the statements of Mr. Otto, the County Supervisor of the Farm Home Administration, because there was no duty under the Indiana Commercial Code to make any statement at all to the defendant. Burns' Ind. Stats. § 19-9-208 provides a method by which the debtor may compel the secured party to provide information on his security interest. This is the only provision in the Commercial Code imposing a duty on a creditor to provide such information. However, the Code does not prevent a creditor from voluntarily providing information as to his security interest. The question here is not whether the County Supervisor had a duty to make a statement to defendant, but rather the legal consequence of Mr. Otto's having volunteered the information. Nothing in the Commercial Code absolves a creditor from being bound by voluntary statements regarding his security interest. Certainly it cannot be argued that the doctrine of estoppel is applicable only to statements required by law.

The government also argues that this case falls within the general rule that the doctrine of estoppel is inapplicable to the United States government. This rule developed in cases where citizens were attempting to deprive the government of public lands, charge the Treasury, or prevent the enforcement of sovereign rights. None of those situations exist here. The defendant is not trying to take property away from the government, but is instead attempting to retain that which it legally obtained. It is the government which has brought this case to court and is attempting to obtain a judgment against the grain elevator company. This case falls outside the general rule upon which the government relies. As was stated in

Walker v. United States, 139 F. 409, 413 (M.D.Ala.1905):

> [W]hen the sovereign comes into court to assert a pecuniary demand against the citizen the court has authority, and is under duty, to withhold relief to the sovereign, except upon terms which do justice to the citizen or subject, as determined by the jurisprudence of the forum in like subject-matter between man and man. The acts or omissions of its officers, if they be authorized to bind the United States or to shape its course of conduct as to a particular transaction, and they have acted within the purview of their authority, may in a proper case work an estoppel against the government.

Similarly, in Cooke v. United States, 91 U.S. 389, 23 L.Ed. 237, 243 (1875) the Supreme Court stated:

> [A] government may suffer loss through the negligence of its officers. If it comes down from its position of sovereignty, and enters the domain of commerce, it submits itself to the same laws that govern individuals there.

 The case here involves a secured transaction in which the government is the secured party and the defendant purchased part of the collateral from the debtor. It is state law which permits the creation of security interests and sets forth rules as to the rights of the parties. It is therefore necessary to examine the framework provided by the Indiana Commercial Code in order to determine what justice would require if this were a dispute "between man and man."

Under the Commercial Code a security interest is created by the signing of a security agreement. A security interest in crops is perfected by the filing of a financing statement. The financing statement need only disclose that a secured party may have a security interest in specified types of collateral owned by the debtor. The security agreement itself may be filed as the financing statement, in which case any third party would be able to determine what property secured the transaction. If the security agreement is not filed, a person dealing with the debtor must rely upon representations of the creditor as to the collateral in which the creditor claims an interest. Under Burns' § 19–9–208 the debtor may compel the secured party to state in what collateral he claims his secured interest. As stated earlier though, the creditor is not precluded from giving this information directly to the third party without demand being made by the debtor.

In this case the government chose not to file the security agreement but only a short financing statement. The defendant could not determine from the financing statement whether the government had a security interest in the Jurs' 1968 crops, and could only accept the representation of the agent of the government as to the government's interest. Before making any purchases from the Jurs, the manager of the elevator company called Mr. William Otto, who was the County Supervisor of the Farm Home Administration, and the person who signed the financing statement on behalf of the government. The defendant made the purchases after being informed by Mr. Otto that the government had no lien on the 1968 crops.

If this series of events took place in a normal business context with private parties involved, it would be clear that the equities would favor the innocent purchaser as against the creditor who failed to disclose his secured interest and misled the purchaser. The Court fails to see why the result should be different merely because the creditor in this case is the United States government. The property rights of the government here do not arise from its sovereign power, but rather exist only through the procedures of the Commercial Code. While the Code permits the creation of secured interests, it also provides a framework which protects the interests of all parties. If the government enters a business transaction and

seeks to cloak itself with the protection afforded a secured creditor by the Commercial Code, it must also respect the rights of others who must similarly deal within the framework of the Code.

In the *Cooke* case, *supra*, at 243, the Supreme Court enunciated a standard which is applicable here:

Generally, in respect to all the commercial business of the government, if an officer specially charged with the performance of any duty, and authorized to represent the government in that behalf, neglects that duty, and loss ensues, the government must bear the consequences of his neglect. But this cannot happen until the officer specially charged with the duty, if there be one, has acted, or ought to have acted. As the government can only act through its officers, it may select for its work whomsoever it will; but it must have some representative authorized to act in all of the emergencies of its commercial transactions. If it fail in this, it fails in the performance of its own duties, and must be charged with the consequences that follow such omissions in the commercial world.

Mr. Otto, the County Supervisor, would be expected to have authority to declare whether the government claimed an interest in the crops. He is the highest government official of the F.H.A. in the area. Furthermore, he is the person who filed the financing statement on behalf of the government. Although it seems unreasonable to expect the officers of a grain elevator company to read and interpret the Code of Federal Regulations prior to purchasing crops from a farmer, if the defendant in this case had gone to that trouble and expense it would probably have satisfied itself that Mr. Otto did have authority to make the statement he made. Under 7 C.F.R. §§ 1800.22(1) and 1800.23 a county supervisor has authority to:

execute and deliver or approve in writing * * * partial and full releases and satisfactions of security or indebtedness, waivers, * * * acknowledgments, * * * and other instruments. * * *

The authority of the county supervisor to execute written releases of security and indebtedness and to make acknowledgments would seem broad enough to include authority to orally acknowledge that the government has no security interest in certain property.

The government argues that Mr. Otto was acting outside his authority in making the statement to defendant's manager. However, the government has failed to name any of its agents who would have the authority to comply with the disclosure requirements of Burns § 19–9–208 or in any other way provide information as to the government's security interest.

It is the opinion of this Court that the government is bound by the authorized statement of Mr. Otto to Mr. Ellis of the Gleaners and Farmers Cooperative Elevator Company. Even if Mr. Otto's statement was not authorized, the failure of the government to have "some representative authorized to act in all the emergencies of its commercial transactions" charges it with "the consequences that follow such omissions in the commercial world." Cooke v. United States, *supra*. The government cannot enjoy the benefits of being a secured creditor while at the same time circumvent the procedures which protect the rights of other parties. To grant the government immunity from the Commercial Code's disclosure requirement, or to absolve the government from the consequences of its representations, would put an unfair burden on parties seeking to deal with those who have borrowed from the government. As a consequence, prospective purchasers might be discouraged from dealing with the farmers who have to rely on the government for operating loans. The Court does not feel that it should sanction a procedure that would disrupt the state created framework for commercial transactions and also tend to defeat the

purposes of the Agricultural Credit program of the federal government.

Since the Court is of the opinion that the allegations of estoppel do present a valid defense, the government is not entitled to a summary judgment.