■ NATIONAL BANK OF NORTHERN NEW YORK, Respondent, v ROBERT B. SHAAD, Appellant.—Order unanimously reversed, with costs, and motion denied. Memorandum: Defendant appeals from an order granting plaintiff's motion for summary judgment to recover money held in escrow following the sale of a "travel lift" in which Northern Yachts, Inc. (Northern), had granted on January 25, 1972 a security interest to plaintiff bank in return for a loan evidenced by a promissory note. The security agreement provided that the collateral secured any and all indebtedness of the debtor to the bank, "now existing or hereafter incurred * * * whether such indebtedness is from time to time reduced and thereafter increased, or entirely extinguished and thereafter reincurred". The bank duly filed a financing statement with respect to this security agreement. In July, 1972 that indebtedness was paid and plaintiff returned the note to Northern, marked "paid"; but at that time the latter owed the bank over $70,000 on others loans. In the ensuing 16 months plaintiff made various additional loans to Northern, including a $20,000 loan on November 16, 1973, secured by another agreement pledging the said "Marine Travel Lift, 30 ton capacity", which also provided that it secured payment of all liabilities of the debtor to the bank, "existing or hereafter arising"; and the bank duly filed a financing statement with respect thereof. Two weeks later the note evidencing the $20,000 loan of November 16, 1973 was "paid" through bank set-off against other funds of Northern, and it was so marked and returned to Northern. At the same time the bank declined to make additional contemplated loans to Northern, ostensibly because it learned that the latter had given a security agreement to another bank covering all of its assets. Plaintiff was not appeased by a statement by the debtor's president that the security agreement given to the other bank was not intended to cover the travel lift. Because certain checks deposited by Northern were dishonored, its account was then overdrawn by about $16,000. In the month of December, 1973 there was an informal meeting of the creditors of Northern. Defendant was attorney for Northern. He claims that at that meeting plaintiff's vice-president Keane informed him that plaintiff had no lien or further interest in the travel lift. Since his client owed him $24,000 for attorney's fees and disbursements, he thereupon "purchased" the travel lift from the client in extinguishment of its fee indebtedness to him, and he promptly painted a notice on the equipment that it was his property. Plaintiff then attached to the travel lift a notice of its lien. Northern was adjudicated bankrupt on April 11, 1974. Plaintiff commenced an action to enforce its lien on the travel lift, making defendant a party thereto; and the trustee in bankruptcy abandoned its interest in the travel lift. By agreement between plaintiff and defendant the travel lift was sold for $24,000 and the proceeds were deposited in escrow, subject to the outcome of this action. Defendant contends that because the notes of January 25, 1972 and November 16, 1973, which were secured by the travel lift under the security agreements, were paid and returned to Northern, the bank had no further interest in the travel lift; and also that the bank is estopped from asserting any interest in the travel lift by reason of its conduct and oral assurance by its vice-president Keane to defendant that it had no interest therein. The provision in the security agreements that the collateral secured all existing

and later incurred indebtedness of the debtor to the bank was valid and effective to continue the bank's lien on the travel lift even after the two notes were paid, at least where, as here, the debtor had incurred other indebtedness to the bank which remained unpaid (Uniform Commercial Code, §§ 9-201, 9-204, subd [5]; *Matter of Public Leasing Corp. v Victory,* 488 F2d 1369; *Matter of Riss Tanning Corp. v United States,* 468 F2d 1211, 1213; *Angel v Chase Nat. Bank of City of N. Y.,* 279 NY 250, 254; *Gillet v Bank of Amer.,* 160 NY 549, 558-559). The language of the security agreements being clear and unambiguous, the subsequent conduct of the parties with respect to the transactions may not be considered for the purpose of varying or contradicting the plain meaning of the agreements (*Hartford Acc. & Ind. Co. v Wesolowski,* 33 NY2d 169, 171-172; *Bethlehem Steel Co. v Turner Constr. Co.,* 2 NY2d 456, 460; *Division of Triple T Serv. v Mobil Oil Corp.,* 60 Misc 2d 720, 731, affd 34 AD2d 618; *Chase Manhattan Bank v First Marion Bank,* 437 F2d 1040, 1048-1049). Nevertheless, the bank's conduct and statements after the execution of the notes and security agreements may be considered on the question whether the bank is estopped to assert its right under the security agreement (*Imperator Realty Co. v Tull,* 228 NY 447, 457; *Gray v Met Contr. Corp.,* 4 AD2d 495, mod 4 AD2d 872; *Manson State Bank v Diamond,* 227 NW2d 195, 201 [Iowa]; *United States v Gleaners & Farmers Co-op. Elevator Co.,* 314 F Supp 1148; Uniform Commercial Code, § 1-103; 1 Anderson, Uniform Commercial Code [2d ed], § 1-103:3); and defendant's contentions in these respects presented questions of fact for trial. The same is true concerning defendant's claims that plaintiff waived its rights under the security agreements (*Alsens Amer. Portland Cement Works v Degnon Contr. Co.,* 222 NY 34, 37-38; *Universal C. I. T. Credit Corp. v Greyhound Rent-A-Car,* 39 Misc 2d 163, 167, affd 20 AD2d 635); and, if plaintiff did, defendant has status to rely on such waiver (*Horne v Radiological Health Servs., P. C.,* 83 Misc 2d 446, 454, affd 51 AD2d 544). Although many of the acts of plaintiff on which defendant relies as manifesting waiver do not justify such reliance, the record reveals several alleged acts or failures to act from which it might reasonably be concluded that plaintiff waived its security interest in the travel lift, so that questions of fact are presented for determination. The court erred therefore in granting plaintiff's motion for summary judgment and dismissing the counterclaim. The record does not show whether defendant preserved his right to a jury trial, which he asserts (CPLR 4102, subd [a]). Upon remission, the court should determine that issue. The questions of the return of interest to which plaintiff may be entitled and the attorney's fees are not properly before us at this time. (Appeal from order of Jefferson Supreme Court—summary judgment.) Present—Marsh, P. J., Moule, Dillon and Witmer, JJ.