*538 OPINION OF THE COURT
George G. Bernhard, J.
This action was commenced as a collection action by General Electric Capital Commercial Automotive Finance, Inc. (hereinafter GECC), a finance company against its former "floor planning” customer, Spartan Motors, Ltd., a defunct automobile dealer and its principal for damages in excess of $1,000,000 and other relief.
Now, aside from counterclaims, it includes a claim against another finance company, General Motors Acceptance Corporation (GMAC), which took GECC’s place as "floor planner” on July 19, 1991 of Spartan’s stock in trade, including two Mercedes automobiles acquired subsequently on May 7 and July 7, 1992.
Both companies now move for summary judgment asserting superiority of liens on the two Mercedes Benz which were claimed to be worth more than $120,000 each.
It is not disputed that GMAC did pay Spartan the sum totaling $346,802, of which $241,500 was attributable to the two Mercedes, after having taken bank notes and issuing "floor plan advices” on the subject autos and others. But that happened after Spartan had already paid the vendors of two Mercedes with its own checks with Spartan being, in effect, reimbursed by GMAC.
Several months later, on March 17, 1993, it was GMAC’s turn to declare Spartan delinquent, whereupon it seized Spartan’s stock in trade. The two Mercedes were sold, apparently at auction, for $194,500, which proceeds are the object of this dispute.
The above raises two issues: (1) Whether the papers obtained and filed by GECC against Spartan were sufficient to assert a lien against the two Mercedes; (2) Whether the papers obtained and filed against Spartan by GMAC in its subsequent "floor planning” program were sufficient to insulate the $194,500 represented by two Mercedes from GECC’s lien and make it subject to GMAC’s lien.
The answers lie in the interpretation of the Uniform Commercial Code and the respective security documents.
The security agreement obtained by GECC’s predecessor and filed under the UCC against Spartan dated September 28, 1983 provides a security interest in all "inventory” of the "dragnet” variety defining "inventory”.
" 'The term "inventory” shall mean’ All inventory, of whatever kind or nature, wherever located, now owned or hereafter *539 acquired and all returns, repossessions, exchanges, substitutions, replacements, attachments, parts, accessories and accessions thereto and thereof, and all other goods used or intended to be used in conjunction therewith, and all proceeds thereof (whether in the form of cash, instruments, chattel paper, general intangibles, accounts or otherwise).”
Such "dragnet” liens are valid and may be properly filed under UCC 9-204. (See, National Bank v Shaad, 60 AD2d 774 [4th Dept 1977].)
It is not disputed that GECC’s claims against Spartan for money due and owing exceed $1,000,000 so that the above "dragnet” lien did attach to the two automobiles.
GECC asserts that GMAC did not protect itself to the same extent in its "wholesale security agreement” labeled July 19, 1991.
"wholesale security agreement
"To: General Motors Acceptance Corporation (GMAC)
"In the course of our business we acquire new and used cars, trucks and chassis CVehicles’) from manufacturers or distributor. We desire you to finance the acquisition of such vehicles and to pay the manufacturers or distributors therefor.
"We agree upon demand to pay to GMAC the amount it advances or is obligated to advance to the manufacturer or distributor for each vehicle with interest at the rate per annum designated by GMAC from time to time and then in force under the GMAC Wholesale Plan.
"We also agree that to secure collectively the payment by us of the amounts of all advances and obligations to advance made by GMAC to the manufacturer, distributor for other sellers, and the interest due thereon, GMAC is hereby granted a security interest in the vehicles and the proceeds of sale thereof ('Collateral’) as more fully described herein.
"The collateral subject to this Wholesale Security Agreement is new vehicles held for sale or lease and used vehicles acquired from manufacturers or distributors and held for sale or lease, and all vehicles of like kinds or types now owned or hereafter acquired from manufacturers, distributors or sellers by way of replacement, substitution, addition or otherwise, and all additions and accessions thereto and all proceeds of such vehicles, including insurance proceeds.”
Accordingly, it is clear that GMAC obtained for itself a similar "dragnet” lien. But, GECC is correct in that there is no *540 language awarding GMAC a security interest, "dragnet” or otherwise, to secure repayment of interest, loans or advances, i.e., money which passes from GMAC to Spartan. The language of the "wholesale security agreement” annexed to the filed "UCC-1 filing statements” is confined to securing payment of money passing to "manufacturers, distributors and sellers” from GMAC. In determining this amount, it is stated, without contradiction, that there was due from Spartan "on the wholesale account” to GMAC the sum of $902,858.97, obviously including the $241,500 advanced to Spartan for the two Mercedes leaving $661,359 due GMAC for advances to vendors as contemplated by the "wholesale security agreement”
This brings one to the question of how much of that $661,359 was satisfied by the seizure by GMAC of Spartan’s inventory. Part of exhibit 13 which appears to be a schedule of bids obtained implies that GMAC collected bids totaling $421,705, plus the $194,500 collected for the two Mercedes leaving a total proceeds of $616,205, leaving GMAC $45,154 short in its collection efforts. GECC claims to be short over $1,000,000.
Furthermore, GECC urges that it is prior in both time and in perfection so as to enjoy a priority under UCC 9-312 (5) (a). For cases enforcing the "first to file” rule see Matter of Mutual Bd. & Packing Corp. (342 F2d 294 [2d Cir 1965]) and MNC Commercial Corp. v Ryerson & Son (882 F2d 615 [2d Cir 1989]); for cases enforcing "first to perfect” see, e.g., MNC Commercial Corp. v Ryerson & Son (supra); and Continental Copper Prods. Co. v Banque Lavoro (852 F Supp 1235 [SD NY 1994]).
GMAC’s lawyer may well rail at the inequity of two expensive Mercedes simply floating in to the trawl of GECC’s "dragnet” lien while it was GMAC which put up the money. The question is whether there is an equitable principle applicable sufficiently to prevent that result.
The principles sought to be applied are those benefits which accrue to the holder of a "purchase-money security interest” which can include priority of lien over conflicting prior security interests such as that held by GECC on the inventory of Spartan. (UCC 9-312 [3].) GMAC’s security interest in order to qualify as "purchase-money security interest” must comply with the definition that follows in UCC 9-107:
"A security interest is a 'purchase money security interest’ to the extent that it is
"(a) taken or retained by the seller of the collateral to secure all or part of its price; or
*541 "(b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.” (Emphasis supplied.)
Certainly, GMAC’s security interest does not qualify as that of a "seller”. So, too, is its possession not that of one who made "advances” since its problems arise out of the fact that it paid the money to Spartan by way of reimbursement, i.e., after the fact, the very opposite of an advance. Hence, GMAC’s success in this matter depends on whether GMAC has incurred an "obligation” to reimburse Spartan for the price of the two Mercedes.
With respect to this issue, GMAC’s employee avers as follows:
"3. GMAC provided floor plan financing for Spartan. As part of that financing, GMAC agreed to advance funds to Spartan for the two Mercedes Benz vehicles that are the subject of this motion.
"4. GMAC was told by Hushang Golestani that the two Mercedes Benz models were difficult to obtain from Mercedes Benz, but they were available from distributors. GMAC agreed to advance the funds to purchase the vehicles upon delivery to Spartan and proof of clear title, which was done.
"5. These arrangements were made before the vehicles were purchased. Hushgang Golestani knew, and GMAC knew, that GMAC was obligated to advance the funds upon delivery of the vehicles and proof of clear title. This obligation was in accordance with the express agreement between GMAC and Spartan; the custom in the trade and course of dealing with Spartan and others.”
The court determines that the above is long in eloquence but short in documentation. Nowhere, in the contracts of adhesion signed by Spartan with GMAC, is there an obligation by GMAC to reimburse Spartan for funds used to purchase automobiles. Therefore, GMAC’s security interest being subsequent in date and perfection to GECC’s interest, was subordinate to that of GECC.
This brings us to the question of the damages due GECC. GECC seeks the higher of the fair value of the two Mercedes and the $194,500 collected. However, nowhere is it asserted that GECC took any steps to assert its windfall until after GMAC sold the two Mercedes in good faith to satisfy its legal security interest pursuant to UCC 9-502, 9-503 and 9-504. *542 GMAC’s conduct in this sale is found to have been commercially reasonable under the principles set forth in UCC 9-507 (2) so that the plaintiffs loss is fixed at $194,500 as of February 8, 1994.