OPINION OF THE COURT
William J. Davis, J.
Motion sequence numbers 001 and 002 are consolidated for disposition. Under motion sequence number 001, the petitioner Bret A. Grebow moves for an order, inter alia, setting aside the sale of a certain motor vehicle by the New York City Marshal Jeffrey Rose (Marshal Rose or Rose) to one Harvey Weisman (Weisman) and to return it to his possession. The City of New York, New York City Department of Finance, New York City Department of Transportation, and the New York City Parking Violations Bureau (collectively the City), and Rose oppose the same. Weisman has not appeared nor served an answer. The record reveals he has been served with process. Hence, he is in default.
Under motion sequence number 002, the General Electric Capital Auto Financial Services, Inc., formerly known as General Electric Capital Auto Lease, Inc. (GECAL), moves, pursuant to CPLR 401 and 1012 (a), for an order granting, inter alia, leave to intervene. Annexed to its papers is a proposed answer with counterclaims and cross claims. GECAL’s motion is not opposed. Accordingly, GECAL’s motion is granted.
This action is one to recover a chattel, formerly known as a replevin action, pursuant to CPLR 7101. It is brought by Grebow in the form of a petition, rather than a complaint. Nevertheless, there is no contention that jurisdiction is not properly obtained and that the notice of petition and petition suffice to supply notice of the intention to commence the action. Accordingly, the court converts the notice of petition and the petition into the summons and the complaint (cf., Matter of Greenberg [Ryder Truck Rental], 110 AD2d 585 [trial court erred in not converting petition to complaint in view of jurisdiction and notice of action], revd on other grounds 70 NY2d 573). During argument sworn testimony was taken from Rose. He testified *475 to the events leading up to the seizure of the subject motor vehicle and its sale to Weisman. Rose appeared pro se and did not serve an answer. He, however, denied the material allegations contained therein. The verified pleading and the verified answer of the City and GECAL’s proposed verified answer with counterclaims and cross claims are part of the record. The underlying facts are not in dispute.
Grebow had several unpaid traffic tickets totalling approximately $2,337.86, owed to New York City Parking Violations Bureau (PVB). PVB obtained a judgment and, thus, became a judgment creditor of Grebow, the judgment debtor. Marshal Rose obtained a property execution pursuant to the PVB judgment. The property execution is a mandate to a Marshal to satisfy PVB’s money judgment out of the personal property of the judgment debtor (see, NY City Dept of Investigation, Marshal’s Handbook, ch I, Levies, § 1, at 1 [July 1986]). Marshal Rose executed the writ of execution by seizing Grebow’s motor vehicle, a 1995 Toyota Camry, on or about December 2, 1996. In a letter from Rose, dated December 9, 1996, addressed to Grebow at a Scarsdale, New York address, Grebow was informed that the motor vehicle was impounded and would be sold at public auction within 10 days from December 2, 1996. The notice did not provide a time or exact date of the sale, but assuming the December 9, 1996 letter arrived three days later the motor vehicle was or could be sold on or about December 12. The notice was returned undeliverable and no forwarding address available. Rose also learned that GECAL was a lienholder of the motor vehicle and notified GECAL of the seizure and possible sale by certified mail to GECAL’s offices located in Barrington, Illinois. The motor vehicle was leased to Grebow from GECAL. GECAL holds the title of the motor vehicle. That notice was postmarked December 10, 1996. Upon learning of the seizure and possible sale of the motor vehicle GECAL notified Grebow on or about December 12, 1996. Grebow appeared at the offices of the PVB and that very date Grebow and one Ms. Carol Deal, a representative of PVB, entered into an application payment plan wherein Grebow paid PVB $1,000 and agreed to pay the balance of $1,337.86 over time (the Agreement). In consideration thereof PVB agreed not to take enforcement action for summonses covered by the Agreement unless Grebow defaulted. PVB reserved its right to the "seizure and sale at public auction” of the motor vehicle. The Agreement also indicated "hold entered” (answer, exhibit D).
*476 In conjunction therewith, Ms. Deal prepared a parking summons collection notice dated December 12, 1996 (the Notice). The Notice contained two boxes entitled: "Marshal” and "Vehicle Seizure”, and were marked accordingly. In addition the name "Rose” was written above the title "Marshal’s Name”. The Notice contained the following pertinent language: "You are hereby authorized to release from Restraint and/or Levy of Execution the above described vehicle on presentation of proper * * * identification and conditioned on the payment of the appropriate fees and expenses” (answer, exhibit E). The Notice also indicated that Grebow signed the Agreement and that Rose could collect his fees. But, the Notice did not contain any language directing Grebow to deliver it immediately to the Marshal (but cf., Raiola v New York City Parking Violations Bur., NYLJ, Aug. 6, 1996, at 21, col 6 [PVB issued a "sales hold” on a vehicle seized by the Marshal. The notice indicated immediate delivery to the Marshal]).
Grebow appeared at the offices of Rose on or about December 17, 1996, and requested the return of the motor vehicle. Rose refused and informed Grebow that the motor vehicle was sold an hour or so earlier to Weisman. The certificate of sale, dated December 17, 1996, reveals that a writ of execution was issued from the Civil Court, New York County, in an action entitled: New York City Parking Violations Bureau v Bret A. Grebow, and that the subject motor vehicle was sold for the sum of $8,000 to satisfy the execution. The motor vehicle was sold to Weisman "subject to the terms and conditions of any and all chattel mortgages, rental agreements, liens, conditional bills of sale, and encumbrances that may be on the motor vehicle” (answer, exhibit F).
All parties were aware of the purpose of the order to show cause, which was to determine whether the sale of the subject motor vehicle should be set aside. The matter, originally returnable for January 28, 1997, was adjourned several times in order for the parties to resolve the dispute, but to no avail.
Grebow complains that the motor vehicle was improperly sold at auction and that he is entitled to the return of the vehicle. In the alternative, if the return of the vehicle is not possible, Grebow seeks to hold the City liable for a money judgment equaling the sum necessary to repay his obligations to GECAL, after applying the net proceeds from the sale. In GECAL’s proposed answer, it seeks to hold the City, Rose and Weisman liable to a certain extent and to hold Grebow liable under the lease agreement.
*477 The City maintains that Marshal Rose is not its officer or agent and claims no responsibility for the auction or how it was handled by Marshal Rose, nor is it liable because it did not levy upon or sell the subject motor vehicle, although Rose impounded the subject vehicle and sold the same for the sole purpose of satisfying the City’s judgment. Marshal Rose maintains that he complied with applicable rules and regulations regarding the notice of sale and the auction of the subject vehicle.
The court treats Grebow’s order to show cause as one for summary judgment, pursuant to CPLR 3212 (a), only as to the issue of liability. Issue has been joined in view of the City’s answer (City of Rochester v Chiarella, 65 NY2d 92, 101), and the action in question involves no issues of fact but only issues of law which are fully appreciated and argued by both sides. Moreover, the record demonstrates that both sides have deliberately laid bare their proof and made it clear that they were charting a summary judgment course (Four Seasons Hotels v Vinnik, 127 AD2d 310; Scattergood v Jamaica Water Sec. Assocs., 234 AD2d 688 [3d Dept] [trial court properly granted summary judgment without first giving notice of its intention to do so], citing Mihlovan v Grozavu, 72 NY2d 506, 508).
The City contends that they had no duty to notify the Marshal of the change of events regarding Grebow’s payment, but it is noted that the City furnished the Marshal in the first instance with information in order for the latter to proceed to seize the motor vehicle (see also, Administrative Code of City of NY § 19-203 [functions, powers and duties of the PVB]). The record clearly reveals that the Agreement provided for Grebow’s partial payment of the judgment and his further payment of the balance. The Agreement constituted an "executory accord” (General Obligations Law § 15-501; see also, Universal C. I. T. Credit Corp. v Greyhound Rent-A-Car, 39 Misc 2d 163, affd 20 AD2d 635). "A new liability was substituted therefor * * * [e]nough to say that it superseded the old” (Yonkers Fur Dressing Co. v Royal Ins. Co., 247 NY 435, 446). In essence, it constituted a contract (e.g., see, Plant City Steel Corp. v National Mach. Exch., 23 NY2d 472 [where there is an accord, plaintiff cannot recover for breach where the defendant has neither breached nor repudiated the accord]). Applying basic contract principles to this judgment creditor and judgment debtor relationship, the Agreement defined the respective responsibilities and obligations of the City and Grebow with *478 regard to the payment of judgment and the execution upon the judgment, e.g., seizure and sale. Here, the language of the Agreement, which was not drafted by Grebow, imposed an affirmative duty on PVB "not to take enforcement action for summonses” covered by the Agreement unless Grebow defaulted. The Agreement merely reserved PVB’s right to the "seizure and sale at public auction” of the motor vehicle. It did not state that the sale would go on, but did indicate a "hold [was] entered” (answer, exhibit D).
The Agreement demonstrates that PVB was obligated to secure the suspension of the sale and the contention that Grebow was obligated to furnish a copy of the Agreement and Notice to Rose is of no legal moment. The Agreement’s language is clear and therein the City agreed not to, among other things, proceed with the sale of the subject motor vehicle. It was the City that was responsible under the Agreement to notify the Marshal of Grebow’s payment and to hold off on selling the subject motor vehicle. Here, the City was aware as of December 12, 1996, but failed to do anything other then to mark "hold entered” in the Agreement.
All Marshals are appointed by the Mayor of New York City for five-year terms (CCA 1601 [1]), and are subject to the jurisdiction of the New York City Department of Investigation. But, they employ their own staff, set their own schedules, and derive their own income from fees. The Court of Appeals has determined that Marshals possess the indicia of independent contractors (Matter of Unified Ct. Sys. v Roberts, 58 NY2d 876, agreeing with dissenting opn of Yesawich Jr., J., 88 AD2d 717, 718). Rose maintains that the public sale was in accordance with the rules and regulations regarding the sale of personal property at a Marshal’s auction (see also, Marino v Perna, 165 Misc 2d 504 [the duties, obligations and liabilities of a Marshal are the same as those of the Sheriff]; Eckstein v Massachusetts Bonding & Ins. Co., 281 NY 435, rearg denied 282 NY 590).
Rose testified that the sale could proceed within 10 days of the seizure and not 10 days of the date of the Notice, regardless of the fact that the notice of the sale is made after the motor vehicle is sold. Following Rose’s logic a sale would be proper where the seizure occurred on December 1, the motor vehicle sold on December 11, but notice to the owner of the vehicle was not mailed until December 20.
The court finds Rose’s testimony that a sale is proper within 10 days of the seizure regardless of the fact that notice of the sale to the owner and/or lienholder from the Marshal is *479 sent after the sale, not supported by applicable rules and regulations. The logic is also inherently unequitable, and makes no sense to serve notice of the sale of personal property after seizure informing of its possible sale within 10 days of the seizure and the sale having taken place.
Pursuant to the Marshal’s Handbook, Rose is mandated to notify lienholders of the property of the "time and place” of the sale (see, NY City Dept of Investigation, Marshal’s Handbook, ch II, Sales, § 1, at 3 [July 1986] [the Marshal "must notify the lienors of the time and place of the sale”]). Here, Rose sent the notice informing GECAL of the seizure and possible sale within 10 days. But, the notice was not in accordance with the Marshal’s Handbook.
Pursuant to the Marshal’s Handbook, Rose also had to place an advertisement two calendar days prior to the scheduled sale (see, NY City Dept of Investigation, Marshal’s Handbook, ch II, Sales, § 1, at 1 [July 1986] [incorporating by reference CPLR 5233 (b)]). Rose testified that the sale was noticed in the New York Times, December 15, 1996, Sunday edition, two days before the sale.
A review of that publication’s Sunday edition reveals one notice of a Marshal sale and that was for a "pre-auction inspection” (NY Times, Dec. 15, 1996, section 10, at 47). The court may take judicial notice of newspaper publications (CPLR 4511 [d]). No advertisement of the subject sale could be found by the court and Rose has not provided documentation to support his testimony.
Rose’s failure to properly advertise the sale does not affect the title of a purchaser without notice of the omission or offense (CPLR 5233 [b]). His failure to do so as well as his failure of not informing GECAL of the time and place of the sale does not leave Marshal Rose free and clear with respect to GECAL’s proposed cross claims.
As to the purchaser Weisman, clearly what he received was what Grebow had. Grebow had only a leasehold interest in the motor vehicle. A sale contemplates the legal transfer of an existing interest, but it does not create a greater interest. Weisman could not obtain title greater than what Grebow had. GECAL indicates that Weisman was issued a "clear title”. The Department of Motor Vehicles issues a "clear title” (cf., Fitzpatrick v Bank of N. Y., 125 Misc 2d 1069, 1070). A judgment cannot be a charge on property the debtor does not own (Matter of Robbins, 74 Misc 2d 793). Here, the record reveals that title to the subject vehicle was held by GECAL. Weisman paid *480 $8,000 for Grebow’s leasehold interest in GECAL’s motor vehicle, but Weisman could not obtain title where, as here, Grebow had no title. Nothing to the contrary is suggested in the record.
Accordingly, the City is liable to Grebow for breach of the Agreement, wherein Grebow promised to pay the underlying judgment and the City promised not to proceed with the seizure (and therefore the sale) of the motor vehicle. The issue of Grebow’s damages, however, requires further inquiry because it is so intertwined with his rights and obligations under the lease agreement with GECAL and GECAL’s proposed cross claims and counterclaims against Grebow, the City, and Rose, who have not had an opportunity to reply; as well as the court’s findings regarding Rose’s failure to comply with certain rules and regulations and the form of title actually received by Weisman.
Ordered that General Electric Capital Auto Financial Services, Inc.’s, formerly known as General Electric Capital Auto Lease, Inc., motion is granted, and that it be permitted to intervene in the above-entitled action as a party plaintiffintervenor; and it is ordered that the summons and complaint in the main action be amended by adding General Electric Capital Auto Financial Services, Inc., formerly known as General Electric Capital Auto Lease, Inc., thereto as a party plaintiff-intervenor; and it is further ordered that General Electric Capital Auto Financial Services, Inc.’s, formerly known as General Electric Capital Auto Lease, Inc., pleadings, in the form annexed to its moving papers, be deemed served upon the plaintiff and the defendants upon service of a copy of this order and that the plaintiff and nondefaulting defendants shall serve their respective replies within 20 days of the service of a copy of this order with notice of entry; and it is further ordered that the attorney for the plaintiff-intervenor shall serve a copy of this order with notice of entry upon the Clerk of the Court and the Trial Support office (room 158), which are directed to amend their records to reflect such change in the caption herein and it is further ordered that defendant Harvey Weisman is in default; and it is further ordered that summary judgment as to the issue of liability in favor of plaintiff Bret A. Grebow is granted against defendants the City of New York, New York City Department of Finance, New York City Department of Transportation, and New York City Parking Violations Bureau; and it is further ordered that the issue of damages suffered by Bret A. Grebow, and the issue of liability of *481 the City of New York, New York City Department of Finance, New York City Department of Transportation, and New York City Parking Violations Bureau, Jeffrey Rose in his capacity as City Marshal of the City of New York, and Harvey Weisman to plaintiff-intervenor General Electric Capital Auto Financial Services, Inc., formerly known as General Electric Capital Auto Lease, Inc., as well as the liability, if any, of plaintiff Bret A. Grebow to the plaintiff-intervenor is referred to a Special Referee to hear and report (with recommendations); and it is further ordered that the entry of judgment against the City of New York, New York City Department of Finance, New York City Department of Transportation, and New York City Parking Violations Bureau is held in abeyance pending receipt of the report and recommendations of the Special Referee and a motion pursuant to CPLR 4403; and it is further ordered that a copy of this order with notice of entry shall be served on the Legal Support office (room 311) to arrange a date for the reference to a Special Referee, which shall be done expeditiously.