110 B.R. 111 (1988)
In re Byron CRANER, d/b/a Craner Tractor & Implement Co., and Barbara J. Craner, Debtors.
Byron CRANER, d/b/a Craner Tractor & Implement Co., and Barbara J. Craner, Plaintiffs,
v.
MARINE MIDLAND BANK, N.A., County of Onondaga, Internal Revenue Service and New York State Tax Commission, Defendants.
Bankruptcy No. 84-00561, Adv. No. 87-0043.
United States Bankruptcy Court, N.D. New York.
July 15, 1988.
*112 Lombardi, Devorsetz, Stinziano & Smith (Bruce E. Wood, of counsel), Syracuse, N.Y., for debtors.
Hancock & Estabrook (Lynn L. Greenky, of counsel), Syracuse, N.Y., for Marine Midland Bank, N.A.
Frederick J. Scullin, Jr., U.S. Atty. (Kenneth C. Brown, of counsel), Washington, D.C., for I.R.S.
Robert Abrams, Atty. Gen. of the State of N.Y. (Michael J. Hungerford, of counsel), Syracuse, N.Y., for the New York State Dept. of Taxation and Finance.
Robert J. Rossi, County Atty. (Martin J. Murphy, of counsel), Syracuse, N.Y., for County of Onondaga.

MEMORANDUM-DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER
STEPHEN D. GERLING, Bankruptcy Judge.
This matter comes before the Court on the motion of Marine Midland, Bank, N.A. ("Marine"), Defendant in the underlying adversary proceeding commenced by Byron and Barbara J. Craner, d/b/a Craner Tractor and Implement Co. ("Debtors"), to determine its secured status pursuant to § 506 of the Bankruptcy Code, 11 U.S.C.A. §§ 101-1330 (West 1979 & Supp.1988) *113 ("Code") or award it a super-priority administrative expense pursuant to Code § 507(b) and determine the rights and priorities of the four Defendants vis a vis the remaining assets of the bankruptcy estate. Argument was heard on February 16, 1988 in Syracuse, New York, by the movant in support of the motion and, in opposition, by the Debtors and the Internal Revenue Service ("IRS"). The other two defendants in the adversary, the New York State Department of Taxation and Finance ("State") and the County of Onondaga ("County"), while served with the motion papers, did not appear, although the former did inform the Court by letter dated March 22, 1988 that it was not opposing Marine's motion.

JURISDICTIONAL STATEMENT
The Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 1334(a) and (b) and 157(a), (b)(1) and (b)(2)(K) (West 1979 & Supp.1988). The following constitutes findings of fact and conclusions of law pursuant to Rules 7052, 3007 and 9014 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.").

FINDINGS OF FACT
The Debtors filed a voluntary petition under Chapter 11 of the Code on June 26, 1984 at 1:30 p.m. In Schedule A-1, the IRS was listed as the holder of a disputed priority claim in the amount of $36,378.00 for 1983 and 1984 withholding taxes and the State was listed as the holder of two priority claims: 1) a claim in the amount of $9,851.00 for sales tax for the quarter ending May 31, 1984 and the month of June 1984, and 2) a claim in the amount of $3,540.00 for withholding taxes for the quarter ending May 31, 1984. The Debtors listed Marine as the holder of three claims: 1) in Schedule A-2, a mortgage claim of $57,820.00 secured by collateral, which, in corresponding with the valuation of the real property listed in Schedule B-1, appears to be the Debtors' home in Jamesville, New York valued at $200,000.00, 2) in Schedule A-2, a claim of $52,233.00 secured by "all accounts receivable and chattel papers. Inventory. [sic]" valued at $28,237.00 for "loan incurred 2/6/81" and 3) in Schedule A-3, an unsecured claim of $9,733.00 to "finance company."
In an Order dated July 26, 1984, the Court set November 18, 1984 as the last day for creditors to file proofs of claim where their claims were unlisted or listed as disputed, contingent or unliquidated as to amount.
The IRS filed a proof of claim on July 17, 1984 in the amount of $36,035.35 for pre-petition withholding taxes which included penalty and interest charges to the date of filing and the unliquidated liability of an unemployment tax of $150.00 for the period ending December 31, 1984. All but the unemployment tax was assessed pre-petition. Of the total amount of $36,035.35, $25,044.91 was designated as secured, for which notices of tax liens were filed April 20, 1984, and the balance, some $10,990.44, was identified as unsecured. On September 17, 1984, the IRS filed a supplemental proof of claim of $1,612.51 for withholding taxes for the second quarter of 1984, which assessment was prohibited by Code § 362(a)(6).
On February 22, 1985, the IRS filed an amended and consolidated proof of claim in the amount of $38,892.28, reflecting an additional assessment "prohibited by Code § 362(a)(6)" for 4th quarter 1982 withholding taxes, interest and penalties.
On March 23, 1987, the IRS filed an administrative expense claim for post-petition withholding taxes in the amount of $12,547.02, inclusive of interest and penalties. In addition, the IRS has now asserted in these proceedings a claim for post-petition interest accrued through February 16, 1988 on its secured claim in the amount of $11,503.62.
Thus, the IRS's claim can be broken up into four distinct parts: $25,044.96 and $13,847.32 in secured and unsecured claims, respectively, including pre-petition penalties and interest, $11,503.62 of post-petition interest on the secured claim, and $12,547.02 as an administrative expense claim.
Of the three proofs of claim Marine filed, the one pertinent to the instant motion was *114 filed on September 7, 1984 in the amount of $52,233.00, plus interest and attorney's fees, for "monies loaned debtor", evidenced by two "variable interest time or demand" notes executed June 6, 1984 and June 18, 1984, for $42,500.00 and $9,733.00, respectively.[1] The proof of claim recited that the loan was secured by "debtor's accounts, general intangibles and chattel paper" and was appended by a security agreement and UCC-1 Financing Statement, dated February 4, 1981 and February 6, 1981, respectively. Both bore descriptions of a security interest in "all accounts and chattel paper now owned or hereafter acquired" and the security agreement extended to "all proceeds of any such property in any form and in all returned or repossessed Goods the sale or lease of which give rise to any such property (Collateral)."
Neither the promissory notes, the security agreement nor the financing statement referred specifically to each other beyond general language as to securing payment of present and future indebtedness in the security agreement and the notes referencing to "any Security Agreement or other agreement". The notes and the security agreement were signed by both the Debtor Byron Craner and an employee of Marine and the UCC-1 statement, while not bearing the Debtors' signature, referred to the security agreement for authority by the Debtor to file it.
On October 25, 1984, the State filed a priority proof of claim in the amount of $7,594.80, including interest to the petition date, for unpaid sales taxes pursuant to Articles 28 and 29 of the New York Tax Law (McKinney 1987) ("NYT"). On April 15, 1985, the State filed a second proof of claim for pre-petition withholding taxes under Article 22 of NYT and interest to the petition date in the amount of $6,552.18. These two claims were consolidated in a claim for $14,146.98, filed on November 9, 1987, which also indicated that two of the three pre-petition sales taxes, in the aggregate of $3,716.02, were each secured by warrants filed on June 26, 1984 in Onondaga County. On January 25, 1988, the State filed an administrative expense claim in the amount of $13,218.33, amending its earlier administrative claim of some $66,389.68 filed on November 9, 1987 "based on the receipt of information that the taxpayer was out of business on March 6, 1985."
On March 28, 1985, the Debtors and Marine executed a cash collateral stipulation pursuant to Code § 363, which was approved by Court Order dated April 4, 1985. The agreement recited that on the date of the filing, the Debtors owed Marine $109,907.00 pursuant to "Agreements" for which it was granted a first perfected security interest, in inter alia, "Debtor's accounts, general intangibles and chattel paper" valued at about $16,000.00 on the date of filing. The parties stipulated that the Debtors' continued use of cash collateral, which was defined as the proceeds of the pre-petition collateral, to operate their business was conditioned on, in pertinent part, the following: 1) the validity of Marine's valid and duly perfected security interest in the pre-petition collateral, 2) the Debtors' establishment of a cash collateral account at Marine in which Marine would have a security interest, 3) no co-mingling between the collateral proceeds and other assets, 4) that the fair market value of the collateralall the accounts, general intangibles and chattel paper  and the balance in the cash collateral account would remain at $15,000.00, 5) granting Marine a rollover security interest pursuant to Code § 552 in all post-petition accounts, general intangibles and chattel paper now owned or hereafter acquired by Debtor not to exceed $18,000.00 and perfected by the execution of the stipulation, and 6) that Debtor's right to use the cash collateral or any assets securing Marine's interest would be automatically terminated on a default, modifying *115 the automatic stay to allow Marine to satisfy its secured interest. The stipulation also stated that it did not prejudice the rights of any creditor or other party in interest to challenge the validity, enforceability or priority of the security interest it granted Marine.
In an Order dated June 3, 1985, the Court approved the re-purchase by the Ford Motor Company of the Debtors' new parts' inventory. The Order directed that upon the sale's consummation, "each secured creditor shall have its lien immediately satisfied to the extent of its allowable secured claim or the lien will attach to the escrow proceeds of the sale . . .". The sale occurred some time in July of 1985 and the $20,306.60 in proceeds were received by the Debtors in March 1986 and placed into an escrow account by their attorney.
Marine brought on a motion to dismiss or convert the Debtors' case on February 21, 1986 for, inter alia, the Debtors' failure to comply with the cash collateral stipulation and Order of April 1985, resulting in their lack of adequate protection. Marine withdrew its motion without prejudice some time at the end of April 1986 upon the Debtors' representation that the real property was being sold.
In an Order dated May 19, 1986, the Court approved the sale of the Debtors' real property in Dewitt, New York for the sum of $105,000.00 pursuant to Code § 363(f). The Order authorized the first and second mortgages on said property, held by Marine and the Allied Corporation, respectively, to be paid in full at the closing and the balance of the sale proceeds to be held by Debtors' attorney in escrow and distributed to "all other duly perfected and enforceable liens against the real property, including, but not limited to, real estate taxes and transfer taxes" at the Court's direction. The sale occurred some time in early April 1987 and netted $34,675.32 after payment of the Marine and Allied mortgages.
By complaint filed on June 3, 1987, the Debtors commenced the underlying adversary proceeding to determine the validity, extent and priority of the liens of the IRS, the State, the County and Marine and for direction as to how to distribute the approximately $56,000.00 of combined proceeds from the sales of their real property and the Ford parts' inventory. They maintained the order of priority to be: 1) IRS, 2) State, 3) Marine, but only as to inventory proceeds as an "account", and 4) administrative expenses. The Debtors specifically requested an Order to first pay the IRS secured claim from the entire proceeds of the inventory sale and then the balance from the real property proceeds, to then pay the State's secured claim from the real property proceeds and any remaining monies to pay administrative expenses.
In their complaint, the Debtors stated that they owed the County some $6,500.00 in post-petition real property taxes, as of May 15, 1987. In an answer filed December 24, 1987, the County admitted that the Debtors had owed post-petition real property taxes of $6,500.00 as of March 15, 1987 but that as of December 31, 1987, with interest and penalties, the total amount was some $9,800.00, exclusive of any outstanding school taxes.
Marine filed the instant motion on January 25, 1988.

ARGUMENTS
Marine argues that it is fully secured against all pre-petition accounts receivables and chattel paper and holds a rollover security interest of $18,000.00 against the accounts receivable proceeds generated by the re-sale of the Ford inventory by virtue of the cash collateral stipulation. It does not assert any interest in the real property proceeds. Even assuming its interest was not secured, Marine claims a superpriority administrative claim for $18,000.00 pursuant to Code § 507(b) because of the stipulation's failure to provide adequate protection and the Debtors' use of the funds that should have been placed in the cash collateral account to preserve the estate. It demands that Debtors' attorneys disgorge any fees to satisfy any "shortfall" of their super-priority from the remaining assets.
Marine admits not knowing whether the liens of the IRS or the State were properly *116 filed and hence valid or the amounts of each lien that are secured and for penalties or interest. "[T]here are certain facts of which your deponent does not have full knowledge and is therefore unable to make a determination as to whether or not these facts are in dispute." Affidavit of Lynn L. Greenky, Esq., para. 3 (Jan. 22, 1988); see also id. at paras. 13, 14. In its accompanying legal memorandum, Marine states that "[t]he facts, as known, are undisputed. As set forth herein, certain facts have not been adequately disclosed. If the assumptions made herein regarding the undisclosed facts are incorrect, adjustment to the arguments set forth will have to be made accordingly." Memorandum of Law, at 2 (Jan. 22, 1988); see also id. at 3, 4.
Marine states that if the IRS and State liens are properly secured, they are statutory liens under Code § 101(47) and unavoidable pursuant to Code §§ 101(47) and 547(c)(6). However, it contends that pursuant to 26 U.S.C. § 6323(c) ("IRC"), the federal tax lien is subordinate to its lien with regard to the Debtors' pre-petition accounts and chattel paper and, by virtue of Code § 552, New York Uniform Commercial Code §§ 9-312(5) and 9-306 (McKinney 1964 & Supp.1988) ("NYUCC"), ineffective against post-petition assets and its own rollover security interest in all accounts, general intangibles and chattel paper. Marine further maintains that even if the State's lien is valid, it was filed subsequent in time to the IRS lien and so is subordinate to the liens of the IRS and its own against pre and post petition collateral.
Marine asks the Court to invoke the doctrine of marshalling in the asset distribution, notwithstanding its secured lien's second or third position (behind or ahead of the State) against the proceeds from the Ford inventory sale. Accordingly, it argues that the IRS, and the State if the Court so finds, should be required to first satisfy their liens from the real property proceeds and then from the accounts receivable proceeds and that any "shortfall" on its secured claim be awarded a superpriority administrative claim.
The IRS submits that their tax lien is superior to any secured interest Marine might have in the Debtors' inventory proceeds while asserting that Marine does not have a secured claim on the proceeds and that the doctrine of marshalling cannot be invoked against the United States. It posits that by Marine's own admission, the latter did not have a pre-petition security interest in Debtors' inventory and that Code § 552 operates to foreclose Marine's security interest in post-petition inventory proceeds, notwithstanding the rollover security interest granted in the cash collateral agreement that might have attached to the inventory sale in July 1985. The IRS notes in passing that if the Court determines Marine to have a super-priority claim under Code § 507(b), such claim is subordinate to its own and is limited to $16,000.00, the value of Marine's pre-petition security claim in the Debtors' accounts and chattel paper.
In any event, the IRS cites to the "forty-five day rule" in IRC § 6323(c) in support of its tax lien's priority over any security interest Marine might have by virtue of the February 1981 security agreement and financing statement or the March 28, 1985 cash collateral stipulation. It notes that the monies Marine loaned to the Debtors in June 1984 were made forty-seven days after it filed the tax lien, the secured property was not "acquired" within this same forty-five day period and the account receivable generated from the inventory sale arose some fifteen months subsequent to the tax filing.
The Debtors concur with the IRS in opposing Marine's motion, which they identify as seeking summary judgment. First, they claim that the IRS and State liens are superior to Marine's security interest since Marine did not have a pre-petition security interest in inventory and its post-petition interest in inventory proceeds as accounts pursuant to the cash collateral agreement became perfected in July 1985 when both the State and the IRS already had valid liens in place against that same inventory. In support thereof, they cite to Code § 552, the forty-five day rule of IRC § 6323(c), and the June 3, 1985 Court Order authorizing *117 the inventory sale and directing the attachment of all liens against the collateral to the proceeds.
Second, the Debtors argue that Marine is not entitled to a super-priority administrative claim under Code § 507(b) because they never violated the terms of the cash collateral stipulation and cannot be held responsible for the competing claims of superior secured creditors like the IRS and the State. They also contend that because most of the accounts proceeds collected by the Debtors subsequent to the execution of the cash collateral stipulation were utilized to make payments on Marine's first mortgage, "it is anomalous for Marine Midland to claim to have been damaged by the disposition of the collateral." Memorandum of Law, at 5 (Feb. 15, 1988).
Finally, the Debtors assert that Marine's claim for super-priority status is moot since, in lacking a valid and perfected security interest in the inventory proceeds, there can be "no secured claim in need of adequate protection." Id. The Debtors maintain the order of priority to be: 1) IRS, 2) State, 3) County, 4) Marine and 5) administrative expenses.
Subsequent to oral argument, all three parties submitted additional memoranda of law solely on the issue of whether or not the IRS is entitled to post-petition interest on its lien securing some $25,000.00 of unpaid pre-petition withholding taxes, pursuant to Code § 506(b). Relying on In re Ron Pair Enterprises, 828 F.2d 367 (6th Cir.1987), cert. granted, 485 U.S. 958, 108 S.Ct. 1218, 99 L.Ed.2d 420 (1988), both Marine and the Debtors argue that policy and legislative history support a reading of the section to codify pre-Code law and apply only to consensual liens, not nonconsensual liens like tax liens. Marine also directs its argument to the liens filed by the State and notes that together, the IRS and the State would collect approximately $14,000.00 in post-petition interest. The Debtors assert that even if the Court does not rule out the possibility of post-petition interest on the IRS' lien, such an award should be refused due to the insufficiency of assets to satisfy all claims.
The IRS contends that the natural reading of Code § 506(b) entitles all holders of oversecured claims to collect post-petition interest and that there is no ambiguity behind this plain meaning, citing in support In re Best Repair Co. v. United States, 789 F.2d 1080 (4th Cir.1986). Moreover, it states that the comprehensive reforms enacted in the Bankruptcy Act of 1978 included the departure from pre-Code law in Code § 506(b).

CONCLUSIONS OF LAW
At issue is how the remaining monies of the estate, approximately $56,000.00, will be distributed towards the claims of four creditor entities  three governmental units, for taxes, and one bank  whose claims exceed those assets.
The Court notes that nowhere in Marine's papers is there any reference that its motion seeks summary judgment. Nevertheless, none of the three parties who appeared at oral argument took issue with the Court's noting the absence of material facts in dispute and characterizing the motion as one for summary judgment. Additionally, were this motion not to be styled as such, it would face dismissal for, on the face of the papers, it requests the same relief which the Debtors sought in commencing the underlying adversary proceeding. Hence, the Court will treat the instant motion as one for summary judgment.
Fed.R.Bankr.P. 7056 makes Fed.R.Civ.P. 56 applicable in bankruptcy proceedings and provides for summary judgment, as a matter of law, for either party, if there are no genuine issues of material fact and all parties have had a full and fair opportunity to air the issues involved. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986); National Exposition, Inc. v. Crowley Maritime Corp., 824 F.2d 131, 133-134 (1st Cir.1987). The evidence, including any ambiguities and reasonable references, must be viewed in the light most favorable to the non-movant. See Adickes v. S.H. Kress, Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); United States v. Diebold, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 *118 L.Ed.2d 176 (1962). The motion must be denied if the Court finds itself trying facts, rather than identifying the legal significance of uncontested facts. See Donahue v. Windsor Locks Bd. of Fire Comm'r, 834 F.2d 54, 58 (2d Cir.1987).
Code § 506(a) instructs that undersecured allowed claims are to be bifurcated into separate and independent secured and unsecured claims "in light of the purpose of the valuation and of the proposed disposition or use of such property." See, e.g., P.J. Taggares Co. v. Glenn (In re Glenn), 796 F.2d 1144, 1146-1147 (9th Cir. 1986). As pertinent to the case at bar, the secured claim is measured to "the extent of the value of such creditor's interest in the estate's interest in such property" and the unsecured claim is "the extent that the value of such creditor's interest is less than the amount of such allowed claim." While the valuation of the subject collateral and the amount of the secured and unsecured claims may vary throughout the pendency of the case, the total value of the claim's allowed amount is generally determined as of the date of the filing. See Code § 502. "Moreover, it is section 506(a) that provides guidance for the valuation of an interest in property of the estate for purposes of determining adequate protection in the contexts of sections 361 through 364." 3 L. King, Collier on Bankruptcy § 506.02 at 506-3 (15th ed. 1988).
Marine's proof of claim applicable to this motion set out a debt of $52,233.00. Neither the Debtors nor any other party in interest have objected so that it is deemed the allowed amount of its claim pursuant to Code § 502(a). The Court also finds Marine to have held a properly perfected pre-petition security interest in accounts and chattel paper and their proceeds, but not in general intangibles or inventory, under NYUCC Article 9 at the time the Debtors' bankruptcy case was commenced, pursuant to the February 1981 security agreement and financing statement. NYUCC §§ 9-203, 302, 303, 304, 402. However, Code § 552(a) provides a general rule that property acquired post-petition is not subject to any lien resulting from a pre-petition security agreement. See United Savings Ass'n of Texas v. Timbers of Inwood Forest Ass., Ltd, 484 U.S. 365, 108 S.Ct. 626, 631, 98 L.Ed.2d 740 (1988); In re Wallman, 71 B.R. 125, 127 (Bankr.S.D.1987) (quoting House Rep. No. 595, 95th Cong., 1st Sess. 376-377, reprinted in, 1978 U.S.CODE CONG. & ADMIN.NEWS 5787, 6332-6333). "This provision nullifies any pre-petition liens to the extent that they include after-acquired property of the Debtor." Hugo v. United States (In re Hugo), 50 B.R. 963, 967 (Bankr.E.D.Mich.1985) (citing to 4 L. King, Collier on Bankruptcy § 552.01, 552-1 (15th ed. 1983)). Thus, Marine's pre-petition security interest is ineffective as against the post-petition account that the Debtors acquired upon the sale of pre-petition inventory in July 1985, for that was when the Debtors' right to payment came into existence, irregardless of having been earned by any performance. See NYUCC § 9-106; Dettman v. Fresno-Madera Prod. Credit Ass'n. (In re Dettman), 84 B.R. 662, 664 (Bankr. 9th Cir.1988).
Code § 552(b) is likewise unavailing to Marine because it too only refers to pre-petition collateral that generates post-petition proceeds. In re Big Hook Land & Cattle Co., 81 B.R. 1001, 1003 (Bankr.D.Mont. 1988); In re Lorenz, 57 B.R. 734, 735-736 (Bankr.N.D.Ill.1986). This "surviving" security interest does not extend to the post-petition proceeds of property in which the creditor had no security interest pre-petition. In this instance the cash proceeds received by the Debtors in March 1986 pursuant to the post-petition account generated by the post-petition inventory sale. See NYUCC § 9-306(1); In re Hugo, 50 B.R. at 967; In re Dettman, supra, 84 B.R. at 664. To conclude differently "would allow reattachment of the already eliminated lien in every case in which the debtor sells the property." In re Wallman, supra, 71 B.R. at 128.[2] Thus, because *119 Marine did not hold a security interest in pre-petition inventory, it now only holds an unsecured claim of $52,233.00, the total amount of its allowed claim.[3]
The nullifying effect of Code § 552(a) on the post-petition status of Marine's pre-petition security interest in accounts and chattel paper is fatal to its request for a super-priority administrative claim under Code § 507(b), as well as to the Code § 552(b) exception. Under the facts of this case, which indicate no post-petition loans made by Marine and no post-petition inventory acquisition by the Debtors, both Code §§ 363 and 507(b) would, at minimum, require a valid pre-petition security interest that includes "proceeds, product, offspring, rents, or profits of such property." Code § 552(b). See, e.g., In re McGill, 78 B.R. 777, 779-780 (Bankr.D.S.C.1986). The Court also notes that there can be no rollover security interest absent a valid original security interest that survives post-petition under Code § 552(b), so that the cash collateral agreement could not have granted Marine a post-petition security interest on the cash proceeds of the inventory sale.[4]
The Court now turns to that part of Marine's motion seeking a determination of the validity, extent and priority of the tax claims by the IRS, the State and the County. The Court observes that but for the penalties incurred on the pre-petition, unsecured taxes, see infra, Marine's unsecured claim stands behind all of these claims, whether they be liens or unsecured priority claims for pre or post-petition unpaid taxes. Code §§ 506, 503(b), 507(a)(1), (a)(7).
At the outset, the Court also notes that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed.R.Bankr.P. 3001(f). Thus, in a Chapter 11 such as here, a creditor whose claim is either unscheduled or listed as disputed, contingent or unliquidated must file a proof of claim by the bar date set by the Court. Fed.R. Bankr.P. 3003(c). Additionally, timely filing a claim has the effect of superseding that claim as set out by the debtor in the schedules and requires anyone who contests such disposition to affirmatively object by way of motion or adversary proceeding. Fed.R.Bankr.P. 3003(c)(4), 3007. Absent such objection, the claim is deemed allowed. Code §§ 501, 502.
Liens securing pre-petition taxes can include penalties and interest to the day of filing. See IRC § 6321; In re Jackson, 80 B.R. 213, 215 (Bankr.D.Colo.1987). While the Code instructs that pre-petition taxes have a priority under Code § 507(a)(7), that amount is limited to the unpaid tax and "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss." Code § 507(a)(7)(G) (emphasis added). The language describing this penalty is clearly not punitive, which is how fines and penalties assessed on tax deficiencies are commonly viewed. The penalty of interest is compensation for the actual monetary loss sustained by a taxing entity for the money's nonavailablity during the nonpayment period. See In re Patco Photo Corp., 82 B.R. 192, 196 (Bankr.E.D.N.Y. *120 1988). Thus, "where penalties and interest are both assessed, a compensatory rule should not be assigned to both." Id. at 196-197. The Court concludes that pre-petition unsecured tax claims including interest and penalties should accord priority to the former, with the unpaid tax, and classify the latter as a general unsecured claim.
With regard to unsecured post-petition taxes that enjoy a first priority under Code § 507(a)(1) in that they are presumed to be actual and necessary costs and expenses of preserving the estate, Code § 503(b), equal priority for the tax and any fines or penalties are clearly set out in the statute. Code § 503(b)(1)(B), (C). The inclusion of interest, however, has been the subject of some dispute. See In re Patco Photo Corp., supra, 82 B.R. 194-195 (analyzing differing cases and legislative history). This Court is in agreement with Chief Bankruptcy Judge Conrad B. Duberstein, see id., that the use of the non-exclusive word "including" introducing the subsections of Code § 503(b) does not necessarily preclude the allowance of interest absent its explicit presence in the statute. See id. at 195 (citing Code § 102(3)). Moreover, strong public policy concerns militate against the disallowance of priority status for interest in administrative expenses for "the effect of such a holding would be to grant the debtors an interest free loan at the expense of both the government and the judicial process." Id. (citing to In re Thompson, 67 B.R. 1, 2-3 (Bankr.N.D.Ohio 1987)); see also In re Bergin Corp., 77 B.R. 210, 211 (Bankr.E.D.Wis.1987). Contra United States v. Tedlin (In re Mark Anthony Constr., Inc.), 78 B.R. 260 (9th Cir. BAP 1987); Flatau v. Jackson (In re Hirsch-Franklin Enter., Inc.), 63 B.R. 864 (Bankr.M.D.Ga.1986).
While the Debtors initially contested the IRS claim for pre-petition withholding taxes in their petition, they acknowledged in their complaint the identical amount of $23,772.78 set out in the Notice of Tax Lien filed by the IRS on April 20, 1984. This act of acknowledgment served to withdraw any objections they originally had regarding the amount of the IRS secured claim. Presumably the increased figure of $25,044.91 reflects accumulated interest and penalty charges.
The IRS has a tax lien secured by all of the Debtors' real and personal property in the amount of $25,044.91, by virtue of the filing of its warrant on April 20, 1984 and the fact that the Debtors' schedules and operating reports evidenced real and personal property in excess of that amount on the date of filing. Code § 506(a); IRC §§ 6321, 6323(a), (f). This properly includes the unpaid tax and interest and penalties to the date of the petition. Code § 502(b)(2); IRC § 6321. The tax lien, a creature of statute, and hence a statutory lien, Code § 101(47), is unaffected by Code § 552, which relates to pre-petition liens resulting from pre-petition security agreements. Additionally, in attaching to all of the Debtors' property pre-petition, the IRS' lien followed any traceable proceeds of that property. See Phelps v. United States, 421 U.S. 330, 334-335, 95 S.Ct. 1728, 1731-1732, 44 L.Ed.2d 201 (1975).
The IRS also holds an unsecured priority claim for pre-petition taxes, including the unpaid principal due and interest, in the amount of $11,416.96 under Code § 507(a)(7). Penalties to the date of petition on these unsecured priority claims, amounting to $2,430.36, are to be classified as general unsecured claims.
The State's claims pose a different question. The record reflects that its timely proof of claim for $7,594.80 in sales taxes, filed on October 25, 1984, set out two claims in the aggregate amount of $3,716.02 (an amount the Debtors now say has increased to some $5,500.00) for unpaid sales taxes on June 24, 1984. This was the same day the Debtors filed their petition. The record reveals that the Debtors' Chapter 11 petition was filed at 1:30 p.m. but is silent on the time of the State's filing. If the State's warrants were filed before 1:30 p.m., a perfected lien was created on the Debtors' real and personal property. NYT § 1141(b); In re Thriftway Auto Rental Corp. (U.S. v. Herzog), 457 F.2d 409, 411-413 (2d Cir.1972); Marine Midland Bank-Central v. Gleason, 47 N.Y.2d 758, 417 *121 N.Y.S.2d 458, 391 N.E.2d 294 (1979). The States' lien would then stand directly behind the previously filed IRS lien since, absent statutory direction, the first in time is the first in right as to property in existence at the time the liens arose, in this case the inventory and the real property. See United States v. New Britain, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954); United States v. Fleming, 474 F.Supp. 904, 908 (S.D.N.Y.1979). However, if the warrants were filed after 1:30 in the afternoon, then said filings are void ab initio by virtue of the automatic stay, see Code § 362(a)(5), and instead represent unsecured priority claims under Code § 507(a)(7).
The Court notes that in motions for summary judgment the evidence is to be viewed in the light most favorable to the non-movant, in this case the State. The Court also observes that the Debtor treats the State's lien as valid, the IRS has remained silent on the issue, Marine has voiced its requests in various alternatives which all seem to treat the State's lien as secured and the State itself has expressed its lack of opposition to Marine's motion. Fed.R.Bankr.P. 3001(f) also creates a presumption in favor of the validity and extent of claims properly filed, which in any event, secured or unsecured, supersede the scheduled listing. Accordingly, the Court finds that the State's two warrants were filed pre-petition on June 26, 1984, granting it a lien on Debtors' real and personal property for $3,716.02. Code § 506(a). The balance of the pre-petition claim for unpaid taxes and interest, $3,878.78, are priority claims under Code § 507(a)(7).
Additionally, the Court finds that the second proof of claim the State filed for withholding taxes in the amount of $6,552.18 on April 15, 1985 was untimely and cannot be considered. It was filed after the bar date of November 18, 1984 and was not referred to as an amendment to the previously filed proof of claim, as was the IRS' amended proof of claim. Moreover, the initial proof of claim, filed on October 25, 1984, gave no notice of a later and entirely new claim for withholding taxes, nor has the State offered any justification for its failure to either file a timely claim or request a time extension nor has it put forward the existence of any other considerations. See In re Kulick, 85 B.R. 680, 681-682 (E.D.N.Y.1988).
Bar dates for the filing of proofs of claims are statutes of limitation to be strictly construed, see In re W.T. Grant Co., 53 B.R. 417, 420, 422 (Bankr.S.D.N.Y. 1985), and in this regard, the State must be treated as any other creditor. The absence of any equitable factors on the record in favor of the State and the State's non-appearance in the instant matter persuades the Court that the late proof of claim was not an amendment, and, hence, must be stricken. Thus, the pre-petition withholding taxes will be allowed in the amount set out in the Debtors' Schedule A-1  $3,540.00.
The Court finds that the County's uncontroverted claim for post-petition taxes is an administrative claim under Code §§ 507(a)(1) and 503(b) and on parity with the administrative expense claims of the IRS and the State, in the full amounts of $12,547.02 and $13,218.33, respectively. As such, its claim stands behind the tax liens and ahead of the Code § 507(a)(7) priority claims and the unsecured claims, which includes Marine and any penalties for pre-petition tax claims where interest is already assessed.
While the May 16, 1986 Court Order directed that all duly perfected and enforceable liens, including real estate taxes, attached to the proceeds of the real property sale, the automatic stay prevented the County from making, levying or enforcing any tax assessments against that real property that resulted in a final monetary obligation or lien. See H & H Beverage Dist., Inc. v. Dep't of Rev. of Pa., 79 B.R. 205, 207 (E.D.Pa.1987). Code § 362(a)(4) prohibits all entities, which includes governmental units under Code § 101(14), from doing "any act to create, perfect, or enforce, or enforce any lien against property of the estate", and the time the underlying claim arose is irrelevant. See Jeffries v. Browning (In re Reserves Develop. Corp.), 64 *122 B.R. 694, 700 (W.D.Mo.1986). Such acts include "all attempts to confiscate the debtor's property or require the debtor to act affirmatively to protect its interests." Morgan Guaranty Trust Co. of New York v. American Savings and Loan Ass'n., 804 F.2d 1487, 1491 (9th Cir.1986).
Under the New York Real Property Tax Law § 102(21) (McKinney 1984 & Supp.1988) ("NYRPT"), a tax lien is defined as "an unpaid tax . . . whether or not evidenced by a written instrument." See also NYRPT § 902. The fact that under local law the lien was automatically created absent payment has no import in this bankruptcy proceeding since all acts taken in violation of the automatic stay are null and void. See H & H Beverage Dist. v. Dep't of Rev. of Pa., supra, 79 B.R. at 207. Thus, the County has no lien for post-petition taxes secured by the Debtors' property; rather it holds an administrative claim for the amount of the unpaid tax from the date of the petition filing to the closing of the sale, including interest and penalties, since these taxes were actual, necessary costs of preserving the estate. Code §§ 507(a)(1); 503(b).
The record reveals an estimation by the Debtors in their complaint of some $6,500.00 of real property taxes from 1985, 1986 and January 1, 1987 through April 3, 1987, the last date being the date the property was sold. While the County did not appear in the instant motion, its answer to the complaint set the amount at some $9,800.00, as of December 31, 1987, plus any outstanding school taxes. NYRPT §§ 301 and 302 instruct that the taxable status of real property is determined annually according to its condition and ownership as of the first day of March and valued as of the preceding January first. Since the Debtors did not execute the real property sale and receive the proceeds until some time after March 1, 1987, their liability for unpaid real property taxes extended back to January first to cover all of 1987. The County is directed to file an administrative claim setting forth all of the unpaid real property taxes due on said real property from the date of the petition filing to the end of 1987, including interest and penalties, or the Court will set the amount at $9,800.00.
With regard to Marine's request for the marshalling of the Debtors' remaining assets, the Court observes that marshalling assets is an equitable doctrine developed to prevent injustice to junior creditors and foster fair dealing, justice and common honesty. 53 Am.Jur.2d Marshalling Assets § 4 (1970) (footnotes omitted).
Marshalling is not bottomed on the law of contracts or liens. It is not in any sense a vested right or lien, but only an equity, to be administered as such. It rests upon equitable principles only and the discretion or benevolence of the court. It deals with all who have an interest in the property involved and is applied only when it can be equitably fashioned as to all of the parties. The doctrine is never applied, and may not be invoked, to bring about an unjust inequitable result or to work substantial injustice or injury to any party in interest. A lien claimant may invoke the equitable principle of marshaling assets only when it will benefit him without injuring others; and if this cannot be done, equity will but follow the law.
Id. (footnotes omitted). See also Sowell v. Federal Reserve Bank, 268 U.S. 449, 457, 45 S.Ct. 528, 530, 69 L.Ed. 1041 (1925); Meyer v. United States, 375 U.S. 233, 237, 84 S.Ct. 318, 321, 11 L.Ed.2d 293 (1963). State law governs the application of marshalling since it is concerned with the competing property interests of liens. See Chittenden Trust Co. v. Sebert Lumber, Co. (In re Vermont Toy Works, Inc.), 82 B.R. 258, 289 (Bankr.D.Vt.1987); cf. In re Kors, Inc. v. The Howard Bank, 819 F.2d 19, 20-21 (2d Cir.1987).
Marshalling has three elements: 1) two or more creditors of the same debtor; 2) multiple funds belonging to that debtor; and 3) one creditor having the ability to resort to all of the funds. See Peoples Bank of Tuscaloosa v. The Computer Room, Inc. (In re Computer Room, Inc.), 24 B.R. 732, 734 (Bankr.N.D. *123 Ala.1982). Under the majority view, an unsecured creditor may not avail himself of the doctrine of marshalling assets as it is basically a protection for junior secured creditors. See In re Vermont Toy Works, Inc., supra, 82 B.R. at 290; Interfirst Bank Fannin v. Bernell (In re Mesa Intercontinental, Inc.), 79 B.R. 669, 671-672 (Bankr.S.D.Tex.1987); Fundex Capital Corp. v. Balaber-Strauss (In re Tampa Chain Co., Inc.), 53 B.R. 772, 777-778 (Bankr.S.D.N.Y.1985); In re Computer Room, Inc., supra, 24 B.R. at 735 n. 5. If a paramount creditor or a third party holding a superior lien will be delayed or inconvenienced in the collection of its debt or prejudiced or injured in any manner, the rule cannot be applied. First City National Bank of Midland v. Mid-West Motors, Inc. (In re Mid-West Motors, Inc.), 82 B.R. 439, 442-443 (Bankr.N.D.Tex.1988). Moreover, the marshalling applicant must meet its burden of the absence of any prejudice by clear and convincing evidence. See In re Vermont Toy Works, Inc., supra, 82 B.R. at 323.
Without deciding whether the IRS can be required to marshall assets, compare In re Morahan, 53 B.R. 489 (D.Me. 1985) with United States v. Herman, 310 F.2d 846 (2d Cir.1962) and United States v. Cohen, 271 F.Supp. 709, 717-719 (S.D.Fla. 1967), the Court finds itself in accord with the majority of courts and holds that Marine is unable to invoke the marshalling doctrine by virtue of its unsecured status. This is so even though Marine has met its burden of the absence of prejudice as to both tax liens and the IRS asserted at oral argument that, assuming it had lien priority, marshalling was not an issue on the facts of this case. Accordingly, the Court denies Marine's request for the distribution of the remaining funds to start with the real property proceeds.
Upon a review of the applicable law on the issue of post-petition interest on nonconsensual liens pursuant to Code § 506(b), the Court concludes the better view to be that neither the IRS, the State, nor any nonconsensual lienholder is entitled to post-petition interest on its secured tax lien. Notwithstanding the presence of the "capricious" comma, there is no agreement in existence to have provided for such interest, nor could there ever be with respect to tax claims, which clearly fall within the category of statutory liens. See In re Ron Pair Enterprises, supra, 828 F.2d at 367; In re Newbury Cafe, Inc., 80 B.R. 259 (D.Mass.1987), aff'd, 841 F.2d 20 (1st Cir. 1988); In re Boston & Maine Corp., 719 F.2d 493 (1st Cir.1983); In re Stack Steel & Supply Co., 28 B.R. 151, 154-155 (Bankr.W.D.Wash.1983) (analyzing counties' claims for penalties and interest on pre-petition assessments in light of Code § 502(b)(2)); 3 L. King, Collier on Bankruptcy § 506.05 at 506-42 n. 5(b) (15th ed. 1988). Contra In re Best Repair Co., v. United States, supra, 789 F.2d at 1080 (citing cases); In re Busone, 71 B.R. 201 (Bankr.E.D.N.Y.1987).
By reason of the foregoing, Marine's motion for summary judgment is granted and it is hereby
ORDERED
1. That the IRS holds a first lien in the amount of $25,044.91 and the State holds a second lien in the amount of $3,716.02.
2. That the IRS and the State hold unsecured claims for pre-petition taxes in the amounts of $11,416.96 and $7,418.78, respectively, including interest but not penalties, pursuant to Code § 507(a)(7).
3. That the IRS holds a general unsecured claim for penalties in connection with the pre-petition unsecured taxes in the amount of $2,430.36, pursuant to Code § 507(a)(7)(G).
4. That the IRS and the State hold administrative expense claims for post-petition taxes, including interest and penalties, in the amounts of $12,547.02 and $13,218.33, respectively, pursuant to Code § 507(a)(1).
5. That the County holds an administrative expense claim in the amount of $9,800.00 under Code §§ 507(a)(1) and 503(b) for post-petition taxes, including interest and penalties, on the real property in DeWitt, New York, from June 26, 1984, the date of the bankruptcy filing to December *124 31, 1987, the end of the calendar assessment year, subject to an amendment by the filing of an administrative claim updating said amount and/or reflecting any amounts already paid within thirty days of the date of entry of this Order.
6. That Marine holds an unsecured claim in the amount of $52,233.00 pursuant to Code § 506 and is unable to invoke the doctrine of marshalling.
7. That the IRS and the State are not entitled to post-petition interest on their tax liens.
8. That the Debtors distribute the monies held in escrow by their attorney in accordance with this Order within thirty (30) days of the date of submission of the County's administrative claim or within sixty (60) days of the date of entry of this Order, whichever is earlier.
NOTES
[1] Marine filed a proof of claim in the amount of $787.65 on October 1, 1984 for what appears to be a Visa or MasterCard credit card. It also filed a proof of claim on September 7, 1984 for $57,674.00 plus interest and attorneys' fees on a mortgage on real property owned by the Debtors in the town of DeWitt, New York and additionally secured by "accounts, general intangibles and chattel paper", referencing to the same security agreement and UCC-1 statement as purporting to secure the claim of $52,233.00.
[2] Marine's reliance on Barnes Freight Line, Inc. v. Chase Commercial Corp. (In re Barnes Freight Line, Inc.), 29 B.R. 664 (Bankr.N.D.Ga.1983) is misplaced for that case concerned the turnover of proceeds from a pre-petition auction sale and did not implicate Code § 552.
[3] An analysis of the priority of conflicting security interests under NYUCC § 9-312 or IRC § 6323(c) with respect to the tax liens is therefore unnecessary.
[4] This leaves aside the separate factual issues of 1) whether the notice requirements of Code § 363(c)(2) were met when the cash collateral stipulation was executed, see, e.g., Smith v. Dairymen, Inc. (In re Smith), 75 B.R. 365, 369 (W.D.Va.1987), most notably in regard to the superior federal and purported state tax liens; 2) whether the Debtors were operating their business pursuant to Code § 1108 when the cash collateral stipulation was entered into on March 28, 1985 since their counsel maintained at the argument that the doors were closed after April 1985 and the IRS' amended proof of claim noted that it was amended due to the cessation of the Debtors' business on March 6, 1985, and 3) to what extent, if any, the alleged collateral that the stipulation was designed to provide adequate protection for eroded below $15,000.00 between the time the stipulation was entered into and the sale occurred  for that would be the amount of the super-priority claim, not the $18,000.00 Marine is claiming. See In re Callister, 15 B.R. 521 (Bankr.D.Utah 1981). These issues, however, are not material to the determination of Marine's status pursuant to Code §§ 502, 506 and 552.